IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1820-06






KYLE DAVID CURTIS, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


IN CAUSE NO. 06-05-00125-CR FROM THE SIXTH COURT OF APPEALS


LAMAR COUNTY






Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., Meyers, Price,
Womack, Johnson, Hervey, and Cochran, JJ., joined. Keasler, J. concurred.


O P I N I O N 

 In this case, we determine whether the court of appeals employed an incorrect standard for
determining whether the officers had reasonable suspicion to stop appellant's vehicle.

Background

 On the night of July 31, 2004, appellant Kyle David Curtis was driving on a four-lane highway in
Paris, Texas, at about 1:00 a.m., when two state troopers (1) observed his vehicle weaving in and out of his
lane over a short distance. (2) The officers stopped appellant, conducted field sobriety tests, and then
arrested him for driving while intoxicated (DWI). Tex. Pen. Code § 49.04(a).

 On June 14, 2005, the trial on the merits took place and the jury found appellant guilty. The
punishment phase followed, on the same day, whereupon the State read the enhancement paragraph of the
information, see Tex. Pen. Code § 49.09(a), and presented evidence of appellant's prior DWI conviction
in September, 1999. The jury then assessed appellant's punishment at 90 days in the county jail and a fine
of $2500.

 On direct appeal, appellant raised four points of error, only the first of which was addressed by the
court of appeals and is the subject of our present review - that the trial court erred in admitting, over
appellant's timely motion to suppress evidence and trial objections, evidence gained when the officers
"illegally stopped [appellant's] vehicle without a warrant, probable cause, or reasonable suspicion." In
response, the State argued that the stop was legal because the officers: (1) observed appellant commit a
traffic offense, and (2) had reasonable suspicion to stop appellant's vehicle. The court of appeals disagreed
with the State in both these arguments and reversed applicant's conviction, declining to address his other
points of error because the answer to his first point of error had been dispositive. Curtis v. State, 209
S.W.3d 688, 695 (Tex. App.-- Texarkana 2006). The State petitioned this Court for discretionary
review, expressly abandoning the first argument that it had presented to the court of appeals. Thus, its sole
contention before this Court is that the officers had reasonable suspicion to stop appellant's vehicle and that
the court of appeals applied an improper standard in determining whether the officers' suspicion was
reasonable.

Discussion

 The State argues that the court of appeals' reasonable-suspicion inquiry "boils down" to the
following paragraph from its opinion:

 The Texas Court of Criminal Appeals, addressing an officer's stop of a weaving
driver under the community caretaking function, has noted that, "[g]iven the frequency with
which the average driver occasionally strays over the side stripe of the road, we have
difficulty even characterizing this behavior as 'distress.'" [Corbin v. State, 85 S.W.3d
272, 277 (Tex. Crim. App. 2002).] "We cannot turn a blind eye to common sense and
experience. There are myriad reasons why the wheels of a vehicle might drift slightly
across a lane marker a single time." [Hernandez v. State, 983 S.W.2d 867, 870 (Tex.
App.-- Austin 1998).] Trooper Anderson [the arresting officer] testified that there are
numerous reasons why a person might swerve or weave, including diabetic coma, fatigue,
switching the radio channel, or dropping a sandwich onto the floorboard. Nothing
suggests why intoxication should be suspected over any other possible reason for
[appellant's] weaving. (Emphasis added.) 


State's Brief at 5 (emphasis in original) (quoting Curtis, 209 S.W.3d at 695).

 The State argues that "the crucial factor" in the court of appeals' analysis seems to be that there
could have been a number of "non-intoxication-related" reasons for the driver's weaving and that the State
had failed to show "why intoxication should be suspected over other possible reasons for [appellant's]
weaving." State's Brief at 5 (emphasis in original) (quoting Curtis, 209 S.W.3d at 695). In other words,
the State continues, the court of appeals held that the State failed to establish reasonable suspicion because
it "did not show that intoxication (i.e., criminal behavior) was the most likely explanation for appellant's
weaving." Id. (emphasis in original). The State contends that this is precisely the standard that we rejected
in Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997).

 We agree. (3) In Woods, we carefully documented the rise and fall of the so-called "as consistent
with innocent activity as with criminal activity" test (4) that the court of appeals applied in the present case
when it concluded that "Nothing suggests why intoxication should be suspected over any other possible
reason for [appellant's] weaving." Curtis, 209 S.W.3d at 695. We noted that the California court which
had originally created this test eventually repudiated it, and quoted that court's explanation for the
repudiation:

 Reconsidering the matter, we are of the view that the [Irwin v. Superior Court
of Los Angeles County, 462 P.2d 12 (Cal. 1969)] dictum cannot be squared with the rule
that a reasonable suspicion of involvement in criminal activity will justify a temporary stop
or detention. Under that standard, if circumstances are "consistent with criminal activity,"
they permit - even demand - an investigation: the public rightfully expects a police officer
to inquire into such circumstances "in the proper discharge of the officer's duties." No
reason appears for a contrary result simply because the circumstances are also "consistent
with lawful activity," as may often be the case. The possibility of an innocent
explanation does not deprive the officer of the capacity to entertain reasonable
suspicion of criminal conduct. Indeed, the principal function of his investigation is
to resolve that very ambiguity and establish whether the activity is in fact legal or
illegal - to "enable the police to quickly determine whether they should allow the suspect
to go about his business or hold him to answer charges." The citizen's undoubted interest
in freedom from abuse of this procedure is protected - so far as it is in the law's power to
do so - by the correlative rule that no stop or detention is permissible when the
circumstances are not reasonably "consistent with criminal activity" and the investigation
is therefore based on mere curiosity, rumor or hunch.  Because the Irwin dictum is thus
in conflict with the settled standards for dealing with this sensitive problem, it is
disapproved. (emphasis added) (citations omitted).

Woods, 956 S.W.2d at 37 (quoting In re Tony C., 582 P.2d 957, 960-61 (Cal. 1978). We agreed with
this reasoning and found it "[e]ven more compelling" to follow in light of the United States Supreme
Court's discussions of the "as consistent with innocent activity as with criminal activity" test in U.S. v.
Cortez, 449 U.S. 411 (1981), and U.S. v. Sokolow, 490 U.S. 1 (1989). Woods, 956 S.W.2d at 37. 
We, therefore, held that "the 'as consistent with innocent activity as with criminal activity' construct [was]
no longer a viable test for determining reasonable suspicion." Id. at 38. In short, the court of appeals, in
the present case, erred insofar as it relied on a test that we had expressly invalidated in Woods.

 Appellant, however, disputes the State's contention that the court of appeals relied on that test to
reach its decision. On the contrary, he argues, the court of appeals followed Woods. He notes that the
standard for determining reasonable suspicion, under Woods, requires an examination of "the totality of
circumstances." Appellant's Brief at 4. He then quotes from the court of appeals' opinion that: "'[t]he
officers stopped [appellant] without a warrant, so the State bore the burden at the suppression hearing of
demonstrating that the stop was reasonable within the totality of the circumstances.'" Id. (emphasis in
original) (quoting Curtis, 209 S.W.3d at 691). He asserts that "[t]his is convincing evidence that the Court
of Appeals recognized the proper standard of review as set forth in Woods v. State." Id.

 We agree that the court of appeals recognized the correct standard, but it appears that it did not
actually apply that standard in this case. For example, the phrase "totality of circumstances" does not even
appear in that court's discussion of whether appellant's stop was based on reasonable suspicion that he
was intoxicated, see Curtis, 209 S.W.3d at 694-95, which is the subject of our present review; nor does
the court otherwise indicate the examination of such circumstances. The court merely noted that "neither
officer testified that anything, other than the weaving itself, led him to suspect intoxication." Id. at 695. (5) 
In so noting, however, the court of appeals failed to take into account other parts of the officers' testimony. 
For instance, the arresting officer testified that: (1) it was approximately one o'clock in the morning; (2) 
he had received specialized training in detecting DWIs; (3) it was part of his training that a driver's weaving
in and out of a lane was a possible indication that the driver was intoxicated; and (4) appellant weaved at
least three times out of his lane over a relatively short distance of a few hundred yards.

 Similarly, the court of appeals also failed to consider that, while the arresting officer might have
been relatively new at the job, he was accompanied by a field-training officer with extensive experience. 
According to that officer's testimony: (1) he had been a state trooper for over 23 years; (2) he was
"certified in different ways" to detect intoxicated drivers; (3) he, like the arresting officer, was also trained
to consider weaving as a possible sign of intoxicated driving; and (4) appellant's vehicle had been "doing
a considerable amount of weaving" in and out of his lane that night.

 In Woods, we stated that "there may be instances when a person's conduct[,] viewed in a vacuum,
appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise
to reasonable suspicion." 956 S.W.2d at 38 (emphasis added). We illustrated this point by referring to
the facts of Terry v. Ohio, 392 U.S. 1 (1968):

 In Terry, the officer observed two men standing about three hundred feet away
from him. One of the men left the other one and walked south past some stores. He
paused for a moment and looked in a store window, then walked on a short distance,
turned around and walked back toward the corner, pausing once again to look in the same
store window. He rejoined his companion at the corner, and the two conferred briefly. 
The second man went through the same series of motions. As described, there is nothing
illegal about the conduct of these two men. Window shopping is neither a crime, nor is it
ordinarily suspicious behavior. But, this particular activity was repeated by the two men
approximately one dozen times over a twelve minute period. Also, at one point, while the
two men were standing together on the corner, a third man approached them and engaged
them briefly in conversation. After the third man left, the two resumed their pacing and
peering. These facts, viewed in light of the officer's thirty years of experience patrolling
an area often the victim of shoplifters and pickpockets, gave rise to enough suspicion to
justify a detention. Yet, under the "as consistent with innocent activity" construct, the
detention might not have withstood constitutional scrutiny.


Woods, 956 S.W.2d at 38 (emphasis added). We, therefore, held that 

 the reasonableness of a temporary detention must be examined in terms of the totality of
the circumstances and will be justified when the detaining officer has specific articulable
facts, which taken together with rational inferences from those facts, lead him to
conclude that the person detained actually is, has been, or soon will be engaged in criminal
activity.


Id. (emphasis added).

 In the present case, the court of appeals failed to consider either the lateness of the hour or the
field-training officer's experience specifically in detecting intoxicated drivers. The court also failed to
consider the "rational inferences," under Woods, from the facts articulated by the officers. The officers
testified that they observed appellant's car weaving in and out of his lane several times, over a short
distance, late at night. A "rational inference" from these facts could be that the driver was intoxicated. 
When viewed in light of the training officer's extensive experience in detecting intoxicated drivers, coupled
with both officers' training to use the driver's weaving specifically as an indication of intoxicated driving,
the trial court could have reasonably concluded that the articulated facts gave rise to enough suspicion to
justify at least an investigation. Hence, the court of appeals erred in concluding that the trial court abused
its discretion in overruling appellant's motion to suppress. Curtis, 209 S.W.3d at 695.

Conclusion

 We hold that the court of appeals applied an incorrect standard to determine whether the officers
had reasonable suspicion to stop appellant's vehicle. We, therefore, reverse the judgment of that court and
remand the case to it in order to address appellant's remaining points of error.

DELIVERED: OCTOBER 31, 2007

PUBLISH
1. The record shows that the highway patrol trooper who stopped, tested, and later arrested 
appellant had graduated from the academy in April 2004 and was in the course of receiving on-the-job
training. He was accompanied, however, by a field-training officer who had been a state trooper for 23
years and had specialized training in DWI.
2. As the defense elicited from the officers at the suppression hearing, appellant's vehicle
weaved twice across "the inside fog lane"and once "across the broken lane divider line," all in the span
of "several hundred yards as opposed to, let's say, a quarter of a mile or so." The arresting officer
defined a "fog line" as "the white line and then the improved shoulder begins. It's the two white lines
running -- you have a solid white line, the broken lane divider line and then another fog line." He
defined "the inside fog line" as the one appearing on the left-hand side and, in this case, the one towards
the median, if one were looking straight down the road.
3. We note that the court of appeals' reliance on Corbin, as shown in the above-quoted passage,
was misplaced inasmuch as Corbin was a community-caretaking-function case and, as the court of
appeals itself noted in its opinion, "the State has not attempted - at trial or on appeal - to justify the
stop based on the community caretaking exception." Curtis, 209 S.W.3d at 692. Corbin is,
therefore, inapplicable to the present case.
4. Woods, 956 S.W.2d at 35-38.
5. It should be noted that the court of appeals' analysis focused only on the evidence produced
before the trial court at the suppression hearing, and not the evidence introduced at the trial on the
merits, since appellant's first point of error questioned the correctness of the trial court's ruling on that
motion to suppress. Accordingly, all references to "testimony" are to the testimony produced at the
suppression hearing.