In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00132-CR


______________________________




REGINALD WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. CR06-216-2




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Reginald Williams guilty of possessing less than one gram of cocaine, a state-jail felony. See Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2007),
§ 481.115(b) (Vernon 2003). Williams now appeals, contending the evidence is legally and factually
insufficient to support the jury's finding that he "possessed" the cocaine at issue. We overrule both
issues and affirm Williams's conviction.

Standards of Review and Applicable Law

 In a review of the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We review all the evidence in the
record, both direct and circumstantial. In reviewing the factual sufficiency of the evidence, we view
all the evidence in a neutral light and determine whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong or manifestly unjust or against the great weight and
preponderance of the evidence. Roberts v. State, 220 S.W.3d 521 (Tex. Crim. App. 2007). 

 Our law defines "possession" as "actual care, custody, control, or management." Tex. Penal
Code Ann. § 1.07(39) (Vernon Supp. 2007). To support a conviction for possession of controlled
substances, the evidence must also show the accused "knew that the matter 'possessed' was
contraband." Washington v. State, 215 S.W.3d 551, 554 (Tex. App.--Texarkana 2007, no pet.)
(citing Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988)). "When an accused is not in
exclusive possession of the place where contraband is found, it cannot be concluded he or she had
knowledge or control over the contraband unless there are additional independent facts and
circumstances that link the accused to the contraband." Id. (citing Poindexter v. State, 153 S.W.3d
402 (Tex. Crim. App. 2005)). The number of these links (1) is not as important as the quality and
degree to which they connect the accused to the contraband. Taylor v. State, 106 S.W.3d 827, 831
(Tex. App.--Dallas 2003, no pet.). 

The Trial Evidence and Analysis of Williams's Sufficiency Challenges

 Detective Amber Rogers of the Rusk County Sheriff's Office was patrolling southern Rusk
County during the night shift on May 16, 2006. While she was working, Rogers saw a vehicle fail
to maintain a single lane of traffic. See Tex. Transp. Code Ann. § 545.060 (Vernon 1999). Rogers
testified the vehicle in question was weaving back and forth in its lane, traveling into the lane
designated for oncoming traffic on the left then back toward the right ditch along the right side of
the road. Based on the observed traffic violation, Rogers stopped the vehicle. Cf. Curtis v. State,
238 S.W.3d 376, 377 & n.2 (Tex. Crim. App. 2007) (weaving from "fog line" into lane for oncoming
traffic, among other factors, provided officer with sufficient reasonable suspicion to stop suspected
drunk driver). The time of this traffic stop was 8:54 p.m. From the moment she turned on her patrol
unit's overhead lights, a camera recorded the remainder of the traffic stop. 

 When Rogers made contact with that vehicle's driver, she noticed that the passenger, later
identified as Williams, appeared to be extremely nervous and was sweating. She also noticed that
Williams was "sweating very profusely" and that his hands were "shaking the whole time." Rogers
returned to her patrol unit and called for backup. 

 Later during the traffic stop, while she was waiting for dispatch to complete running criminal
histories and warrant checks on the vehicle's occupants, Rogers saw Williams drop something onto
the ground outside the passenger-side window. When Rogers walked back to the vehicle, she saw
what she believed to be rocks of crack cocaine on the ground next to the passenger side of the
vehicle. Rogers subsequently arrested Williams, who denied possessing any cocaine or having any
knowledge of the cocaine. A search of the vehicle revealed a canister with cocaine residue in it; this
canister had been within arm's reach of Williams's seat inside the car. 

 After Williams had been taken into custody, he was apparently directed to sit on the front of
Rogers's patrol vehicle while she conducted a more thorough search of the interior of the other
vehicle. The video camera in the patrol car continued to record the remainder of the traffic stop. 
While Williams sat on the patrol car and while Rogers was distracted with searching the other car,
Williams appears on the police videotape to pull something out of his shoe and then throw it while
Rogers conducted her search. Rogers did not herself see Williams throw this object at this point in
time; the officer learned of Williams's furtive conduct when she reviewed her videotape later the next
morning. When Rogers returned to the scene of Williams's arrest, she was unable to find anything
such as drugs at the location where Williams had been arrested. 

 Melissa Brooke Harrison, a forensic scientist with the Texas Department of Public Safety's
Crime Laboratory in Tyler, testified that she examined the suspected drugs seized by the Rusk
County Sheriff's Office in connection with this case. According to Harrison's scientific testing, the
eight off-white rocks submitted in connection with the case by the sheriff's office contained cocaine;
the total weight of the narcotics came to 1.37 grams. 

 Next, Williams took the witness stand in his own defense. He told the jury that neither he
nor his companion that evening, Gary Roquemore, had been using drugs on the night in question. 
Williams denied possessing or disposing of any drugs that night. Instead, Williams told the jury that
what they had seen him drop on the side of the road was a white cigarette lighter. Williams also
claimed that his apparent nervousness on that evening (shaking hands and profuse sweating) was the
result of having a high white blood cell count in his body. He thereafter repeatedly denied throwing
anything out of the car's window. Williams's only explanation for how police found cocaine at the
scene of the traffic stop was that such was a freakish coincidence. 

 The thrust of Williams's argument on appeal is that the evidence fails to show sufficient links
between himself and the cocaine later found by the police. We disagree. Rogers testified that, not
long after the initial traffic stop, she saw the passenger (whom she identified as Williams) reach his
hand out of the passenger-side window and drop something. Rogers later observed the dropped
object and thought it looked like rocks of crack cocaine. When this dropped object was submitted
to the crime laboratory, it turned out to contain eight rocks of cocaine. Given Williams's nervous
appearance (shaking and sweating), his proximity to the drugs both when and where they were
initially discarded, the presence of other contraband containing cocaine residue inside the car (which
was found within an area that Williams could have reached), and Williams's post-arrest furtive
movements (from which the jury was free to infer that Williams possessed additional contraband and
knew of its illegality), we conclude there were sufficient links between Williams and the cocaine
from which the jury could have reasonably concluded that Williams knowingly possessed the crack
cocaine in question. The evidence is, therefore, factually and legally sufficient to support the jury's
verdict that Williams "possessed" the cocaine in question.

Conclusion

 Having found no merit in Williams's appellate issues, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: April 7, 2008

Date Decided: April 24, 2008


Do Not Publish
1. These links include the following factors:


(1) the contraband was in plain view or recovered from an enclosed place; (2) the
accused was the owner of the premises or the place where the contraband was found;
(3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was present;
(7) the accused possessed other contraband when arrested; (8) paraphernalia to use
the contraband was in view, or found on the accused; (9) the physical condition of
the accused indicated recent consumption of the contraband in question; (10) conduct
by the accused indicated a consciousness of guilt; (11) the accused attempted to flee;
(12) the accused made furtive gestures; (13) the accused had a special connection to
the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself
or herself to the contraband; (16) the quantity of the contraband; and (17) the accused
was observed in a suspicious area under suspicious circumstances. 


Washington, 215 S.W.3d at 554.



hief Justice


Date Submitted: November 14, 2002

Date Decided: November 20, 2002


Publish
1. Miranda v. Arizona, 384 U.S. 436 (1966).