# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00457-CR

**Ryan Cameron Foster, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C1-CR-07-218663, HONORABLE JAN BRELAND, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because the majority improperly substitutes its judgment for those of the police detective and the trial court and fails to give proper deference to the trial court's and detective's determinations, I respectfully dissent.

At the hearing on Foster's motion to suppress, Detective Thomas testified that before becoming a detective, he had worked traffic patrol and received traffic and DWI training. At about 1:30 a.m., on September 13, 2007, he was driving his unmarked car back to the police station and was within a few blocks of Austin's bar district. He stopped at a red light, and a pick-up truck driven by Foster came up behind Thomas, stopping "extremely close" to Thomas's car. After coming to a stop, Foster lurched forward twice and revved his engine. Thomas believed the second lurch was an attempt to change lanes but said Foster's truck was too close to the rear of Thomas's car to be able to move into the other lane. Thomas said, "I don't know what he was trying to do. To me, he wasn't

exhibiting normal driving behaviors." Thomas believed Foster's driving was unsafe because "he was lurching right behind my vehicle. It alarmed me and caused me to have concern that he might strike my vehicle." Thomas testified that Foster's front bumper was only inches away from Thomas's rear bumper and that Foster could not have changed lanes without hitting Thomas's car. Thomas further testified that, based on his training and experience, people driving in the area late at night often were impaired. He knew there were numerous DWI arrests in the same area at the same time of night and agreed that it would be "natural" to suspect that erratic or unsafe driving occurring in the same area of town might be the result of an impaired or intoxicated driver. Thomas testified, "I believed what was occurring behind me was unsafe, and I was concerned that—due to where we were at downtown and the time of night, I was concerned that maybe this driver was impaired."

It is noteworthy that the majority fails to expressly acknowledge that an officer may lawfully detain a driver who has committed no traffic offense but is suspected of driving while intoxicated. A long line of authority recognizes that an officer may have reasonable suspicion to investigate whether a driver is impaired without having witnessed a traffic violation. *See, e.g.*, *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("Although not an inherently illegal act, when the officer observed appellant's car weaving between traffic lanes, reasonable suspicion existed to believe appellant was driving the motor vehicle while intoxicated."); *Davis v. State*, 923 S.W.2d 781, 784, 788 (Tex. App.—Beaumont 1996), *rev'd on other grounds*, 947 S.W.2d 240 (Tex. Crim. App. 1997) (car swerved within its lane three times; although no traffic violation, stop was proper because there was reasonable suspicion that driver was impaired); *Fox v. State*, 900 S.W.2d 345, 347 (Tex. App.—Fort Worth 1995, pet. dism'd, improv. granted)

2

("Although none of the acts in which Fox engaged prior to the initiation of the stop were inherently illegal, each was sufficient to create a reasonable suspicion that some activity out of the ordinary was or had occurred."); *Townsend v. State*, 813 S.W.2d 181, 185 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (swerving was not traffic violation, but stop was proper because "behavior was sufficient to raise a reasonable suspicion of driving while intoxicated").

We are supposed to consider the reasonableness of a brief investigative detention in light of the totality of the circumstances at the time of the start of the detention, requiring the police officer to point to specific, articulable facts that, when combined with rational inferences that may be drawn from those facts, would lead to a reasonable suspicion that the detained individual had, would soon be, or was presently engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). We must ask whether a police officer had a "minimal level of objective justification," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Immigration & Naturalization Servs. v. Delgado*, 466 U.S. 210, 217 (1984)), bearing in mind "commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Although an officer may not stop someone based solely on a hunch, reasonable suspicion requires significantly less basis than probable cause. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). We apply "an objective standard" and ask whether the facts available to the officer at the time of the detention would allow a reasonable officer to believe that the detention was appropriate. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). In doing so, "we should avoid a formulaic approach or a piecemeal comparison of similar factors in other cases, and instead consider the

3

totality of the circumstances in *this case* and rely on commonsense inferences." *Tanner*, 228 S.W.3d at 857; *see Arvizu*, 534 U.S. at 273, 276 (courts should avoid considering facts in isolation and instead ask whether officer was justified in drawing inferences from all information available at time of stop); *Ornelas v. United States*, 517 U.S. 690, 698 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983)) (determination in one case will seldom be useful in another).

As the Supreme Court has said,

> as a general matter determinations of reasonable suspicion . . . should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

> A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.

*Ornelas*, 517 U.S. at 699; *see also Tanner*, 228 S.W.3d at 856 (appellate court viewing trial court's determination of reasonable suspicion should "give almost total deference to the court's determination of historical facts but review de novo its application of the law to the facts"; in absence of explicit findings of facts, appellate court should "view the evidence in the light most favorable to the court's ruling and assume the court made implicit findings of fact supported by the record"; trial court is sole judge of witness credibility).

The majority's analysis is deeply flawed and disregards direct instructions provided to us by superior courts on how we should conduct a reasonable-suspicion analysis. In particular, although the majority acknowledges that the "as consistent with innocent activity as with criminal

4

activity" test has been disapproved and that we should consider the totality of the circumstances, *see Curtis v. State*, 238 S.W.3d 376, 378-79 (Tex. Crim. App. 2007), the opinion goes on to state that the "plausibility of an innocent explanation in this case affects our determination" and that "[t]ime of day, by itself, is 'owed virtually no weight' as a factor in determining reasonable suspicion. *See State v. Thirty Thousand Six Hundred Sixty Dollars and No/100*, 136 S.W.3d 392, 400 (Tex. App.—Corpus Christi 2004, pet. denied). That sort of piecemeal analysis of the various facts in isolation is exactly the kind of analysis disapproved by the Supreme Court in *Arvizu*. 534 U.S. at 273-76. Indeed, the court of criminal appeals recently reversed an appellate court's reversal of a trial court's overruling of a motion to suppress, stating that although the behavior in question might in a vacuum have appeared to be perfectly innocent, when viewed in light of all of the circumstances, including the officer's experience in detecting impaired drivers, the "lateness of the hour," and rational inferences that could be drawn from the facts, the trial court "could have reasonably concluded that the articulated facts gave rise to enough suspicion to justify at least an investigation." *Curtis*, 238 S.W.3d at 380-81 (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).

In this case, as was disapproved in *Curtis*, the majority improperly disregards the lateness of the hour and the location in which Foster was driving, *see id.*, and contrary to guidance from the Supreme Court, fails to give proper deference to the inferences Thomas, an experienced police detective, reasonably drew from the totality of the circumstances, and the trial court's determination of credibility and other factual matters, *see Ornelas*, 517 U.S. at 699. Late at night, or more properly, very early in the morning, mere blocks from Austin's well-trafficked bar district and across the street from the police station, Foster pulled within inches of Thomas's car, revved his

5

engine, lurched toward Thomas's car once, and lurched a second time as if to try to pull into the next late, despite the fact that there was no room for him to maneuver out of the lane. Viewing all of this as a totality, I would hold that "the trial court could have reasonably concluded that the articulated facts gave rise to enough suspicion to justify at least an investigation" into whether Foster lacked his full faculties and was impaired. *Curtis*, 238 S.W.3d at 381. Thomas's decision to investigate was not an "arbitrary invasion" of Foster's rights, and the interaction would not have occurred had Foster not come within inches of hitting Thomas's car and attempted a lane-change he obviously could not complete.

The majority should have constrained its inquiry to answering only this question: giving appropriate deference to the trial court's determination of historical facts and credibility and to Detective Thomas's experience and training, was it reasonable for Thomas to suspect, in light of the articulated facts, *including* the lateness of the hour and area of town in which the incident occurred, that Foster might be impaired? Instead, the majority re-evaluated the facts, substituted its judgment for that of the trial court, and decided that the facts do not sound reasonable to it. Because this is an improper analysis of whether Thomas had reasonable suspicion to conduct a brief investigative detention of Foster, I must dissent.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed:  August 6, 2009

Publish

6