

# IN THE
# TENTH COURT OF APPEALS

No. 10-12-00036-CR
No. 10-12-00037-CR

**ROBERT WESLEY THOMAS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court Nos. F45379 and F45567**

## MEMORANDUM OPINION

Robert Wesley Thomas was convicted of the offense of possession of a controlled substance less than one gram and sentenced to twenty months in the state jail.[1]  TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010).  Thomas was also convicted of the offense of fraudulent use of identifying information for which he was sentenced to

---

[1] Cause No. 10-12-00036-CR is an appeal from the judgment of conviction for the possession of a controlled substance.  Cause No. 10-12-00037-CR is an appeal from the judgments of conviction for the offenses of fraudulent use of identifying information and tampering with a governmental record.  The issue raised by Thomas is the same for both appeals.

thirty years in prison and of the offense of tampering with a governmental record for which he was sentenced to eight years in prison. TEX. PEN. CODE ANN. §§ 32.51, 37.10 (West 2011). Thomas complains that the trial court erred by denying his motions to suppress evidence filed in each cause number because no reasonable suspicion existed for the officer to have initiated the traffic stop that led to the discovery of the commission of these offenses. Because we find that the trial court did not err by denying the motions to suppress, we affirm the judgments of the trial court.

*The Facts*

At approximately 5:00 p.m., an officer was patrolling a neighborhood that had experienced a recent increase in burglaries and mailbox thefts, which commonly occurred during the daytime hours. The officer was very familiar with the area. While patrolling, the officer observed a white Corvette driven by Thomas that he had never seen before sitting near the road on a driveway facing a house approximately 50 yards up the driveway. The Corvette was parked next to that home's mailbox. No other vehicles were present at the residence. The officer found it odd that the vehicle was stopped where it was in the direction it was facing if the occupants were legitimately at the residence because of the length of the driveway, which would have provided a way to turn around to come out facing the road. The officer passed the home and turned around a corner to observe the Corvette and to run a license check. The officer

observed the passenger of the vehicle, later found to be Leslie Dahn,[2] and felt that Dahn stared at him suspiciously as he passed by the driveway. The license check showed that the vehicle was registered to an out-of-county address.

The Corvette backed out of the driveway and drove toward the officer; however, the Corvette turned left onto the street where the officer had turned right. The officer turned around and began following the Corvette, which turned almost immediately into a neighborhood which consisted of a series of cul-de-sacs and ended in a dead end. The Corvette used its indicator at an intersection and then did not turn, but continued and turned at the next intersection onto a cul-de-sac. At this point, the officer activated his lights and effectuated a traffic stop.

Upon making contact with Thomas and Dahn, the officer discovered that each of them had active warrants. A search incident to arrest was conducted on Thomas and a small baggie of methamphetamine, a driver's license for a woman from Fort Worth, and a blank Texas ID were also found in this search. Additional methamphetamine; cocaine; nitroglycerin; a notebook containing names, dates of birth, social security numbers, and driver's license numbers of three people; two laptop computers with a printer and a magnetic stripe reader; assorted checks, credit cards, and gift cards; plastic baggies; and syringes were all found in the vehicle in a search conducted after Thomas and Dahn were arrested.

---

[2] *See Dahn v. State*, No. 10-12-00049-CR, 2012 Tex. App. LEXIS _____ (Tex. App.—Waco Dec. 6, 2012, no pet. h.).

Thomas and Dahn each filed pretrial motions to suppress evidence contending that the officer lacked reasonable suspicion to initiate the traffic stop. The arresting officer was the sole witness and the trial court denied the motions, which were heard jointly. Thomas then pled guilty and the trial court certified that he had the right to appeal the denial of the motions to suppress.

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

*Reasonable Suspicion*

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (*citing Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Otherwise stated, those specific, articulable facts must show unusual activity, some evidence that connects the detained individual to the unusual activity, and some indication that the unusual activity is related to crime. *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App.

2011). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler*, 348 S.W.3d at 914. The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see also Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

The totality of the circumstances includes the police officers' training and experience. *State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd). Accordingly, "when innocent facts, meaningless to the untrained, are used by trained law-enforcement officers, those facts, combined with permissible deductions therefrom, may form a legitimate basis for suspicion of criminal activity." Id. Other factors that courts may consider, although perhaps insufficient standing alone, include whether the temporary detention occurred in an area known for having higher rates of crime and whether the person stopped is displaying nervous or evasive behavior. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The trial court's fact findings included that the neighborhood where the Corvette was parked was in a high crime area known for burglaries and mail thefts which had

been recently increasing, particularly in the daytime; that Dahn appeared concerned about the officer's appearance; the vehicle was registered out of county in Fort Worth; the Corvette backed out of the driveway; and the Corvette turned onto a dead-end road. We find that the record supports these fact findings.

Based on our review of the evidence, we conclude that trial court's fact findings support the trial court's determination that the totality of the circumstances gave rise to a reasonable suspicion that Thomas was about to engage in criminal activity. The facts known to the officer were sufficient to suggest that something of an apparently criminal nature was brewing. *Derichsweiler*, 348 S.W.3d at 917. Therefore, the officer had reasonable suspicion to stop Thomas and to detain him for investigative purposes. *Id.* at 914. The trial court did not err in denying Thomas's motions to suppress evidence. We overrule Thomas's sole issue.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed December 6, 2012
Do not publish
[CR25]