02-10-512-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00512-CR

 

 


 
 
 Jayson Vestus Ritchie
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          The
trial court denied Appellant Jayson Vestus Ritchie’s motion to suppress
evidence obtained after the police stopped his car.  Appellant reserved his right
to appeal the trial court’s ruling, and pled guilty to driving while
intoxicated—felony repetition.[2]  The trial court fined
Appellant $1,350 and placed him on ten years’ community supervision.  In his
sole point on appeal, Appellant contends that the trial court abused its
discretion by denying his motion to suppress because the officer stopped him without
reasonable suspicion.  We affirm.

Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review, giving almost total deference to the trial
court’s determination of historical facts and reviewing de novo the trial
court’s application of law to facts that do not turn on assessments of
credibility and demeanor.  Amador v. State, 221 S.W.3d 666, 673 (Tex.
Crim. App. 2007); Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); Guzman
v. State, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court
makes explicit fact findings, as the trial court did here, we determine whether
the evidence, when viewed in the light most favorable to the trial court’s
ruling, supports those findings.  Kelly, 204 S.W.3d at 818–19.  We then
review the trial court’s legal ruling de novo unless its explicit fact findings
that are supported by the record also resolve the legal issue.  Id. at
818.

The
Trial Court’s Findings and Conclusions

          After
the hearing on Appellant’s motion to suppress, the trial court made the
following findings of fact:

Officer Mario
Merendon of the Keller Police Department stopped this Defendant March 28, 2008[,]
shortly after 12:18 a.m. on Davis Blvd. in Keller, Texas.  The officer stopped
him for a number of reasons, all of which contributed to and resulted in the
stop.  The Defendant’s driving was recorded by Officer Merendon’s car video and
subsequently introduced into evidence.  The reasons for the stop were as
follows:

 

1).   The Defendant
was in the right hand lane and veered out of the lane, completely crossing the
white line, then returned to the lane.  This is a violation of 545.060 of the
Transportation Code (failing to maintain a single lane) if it is done in an
unsafe manner.  The Officer testified that it was unsafe due in part to the
fact that he failed to signal his intent to make a lane change.  It is also
dangerous because it gives other drivers no notice that the Defendant may be
moving into their lane; also, a person not staying in their own lane can cause
accidents with other drivers, or hit a stationary object.

 

2).   The Defendant
then crossed over a striped area dividing the main portion of the
traveling highway and a turn lane for some private business.  This is a
violation of 545.004 of the Transportation Code (failure to comply with a
traffic control device).

 

3).   The Defendant
was driving late at night, was weaving, failing to signal lane changes, and was
exceedingly slow to respond when the Officer finally did activate his overhead
lights.  He also did turn on his turn signal when the officer was pulling him
over, then turned it off, and then turned it on.  His indecisiveness may also
have been an indication that he was impaired.  When he pulled the Defendant
over he then smelled alcohol.  The arrest in this case was effected without a
warrant.

All of the factors
listed above were considered by Officer Merendon and were operative in his
decision to detain and investigate the Defendant for DWI.

          Based
on these findings, the trial court concluded that the officer had properly
detained Appellant because Appellant had committed two traffic violations, and independent
of these violations, the officer had reasonable suspicion to investigate
whether Appellant had been driving while intoxicated (DWI).

The Issue

          The
evidence at the suppression hearing consisted solely of the testimony of Keller
Police Officer Mario Merendon and a DVD copy of the officer’s in-car video record
of the events leading up to and including the stop.

          Appellant
contends that the trial court’s failure to suppress the fruits of the stop
violated his rights under the Fourth Amendment to the United States
Constitution, Article I, Section 9 of the Texas constitution, and code of
criminal procedure article 38.23.  He argues that, contrary to the trial
court’s findings of fact and conclusions of law, the evidence shows that
Officer Merendon observed no traffic violations and had no reasonable suspicion
to investigate Appellant for DWI.  We need not decide whether the evidence supports
the trial court’s conclusion that the officer reasonably suspected that
Appellant had committed any traffic offenses because, having examined the evidence
in the light most favorable to the trial court’s ruling, we hold that it
supports the trial court’s conclusion that reasonable suspicion existed to stop
Appellant for DWI.

Reasonable
Suspicion

          The
Fourth Amendment protects citizens against unreasonable searches and seizures
by government agents.[3]  U.S. Const. amend. IV; see
State v. Garcia-Cantu, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008).  A seizure
is reasonable under the Fourth Amendment if the agent reasonably suspects the
person of engaging in criminal activity.  Terry v. Ohio, 392 U.S. 1, 22,
88 S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).

          The
court of criminal appeals has held that traffic stops are seizures within the
meaning of the Fourth Amendment.  Corbin v. State, 85 S.W.3d 272, 276
(Tex. Crim. App. 2002); see Garza v. State, 771 S.W.2d 549, 558 (Tex.
Crim. App. 1989); see also Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct.
1391, 1396 (1979).  Because a routine traffic stop typically involves only a
short, investigative detention, as opposed to a custodial arrest, we analyze
traffic stops under the principles the Supreme Court developed for
investigative detentions in Terry.  392 U.S. at 22, 88 S. Ct. at 1880; see
Berkemer v. McCarty, 468 U.S. 420, 104 S. Ct. 3138 (1984); Martinez v.
State, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, no pet.).

          A
police officer conducts a lawful temporary detention when he has reasonable suspicion
to believe that an individual is violating the law.  Ford, 158 S.W.3d at
492; Ballentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). 
Reasonable suspicion exists when, based on the totality of the circumstances,
the officer has specific, articulable facts that when combined with rational
inferences from those facts would lead the officer to reasonably conclude that
a particular person actually is, has been, or soon will be engaged in criminal
activity.  Ford, 158 S.W.3d at 492; Garcia v. State, 43 S.W.3d 527,
530 (Tex. Crim. App. 2001).  This is a wholly objective test that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop existed at the time the officer made
the stop.  Ford, 158 S.W.3d at 492; Garcia, 43 S.W.3d at 530; see
Fowler, 266 S.W.3d at 502.  A reasonable-suspicion determination is made by
looking at the totality of the circumstances.  Ford, 158 S.W.3d at 492–93;
Garcia, 43 S.W.3d at 530.

Analysis

          According
to the trial court’s conclusions of law, reasonable suspicion existed to
support Appellant’s detention to investigate him for DWI due to the following
specific facts:  Appellant was driving late at night, weaving out of his lane,
failing to signal lane changes, driving over marked prohibited areas, was
“exceedingly” slow to respond when the officer activated his emergency lights, activated
his turn signal, turned it off again, turned it on again, and smelled of
alcohol when the officer approached him.

          Because
our inquiry is whether Appellant’s detention was supported by reasonable suspicion,
it is important to note when that detention began.  A Fourth Amendment seizure
occurs when a reasonable person would believe he or she is not free to leave
and has yielded to a government agent’s show of authority or has been
physically forced to yield.  California v. Hodari D., 499 U.S. 621, 627–28,
111 S. Ct. 1547, 1551–52 (1991); Johnson v. State, 912 S.W.2d 227, 236
(Tex. Crim. App. 1995); Wiseman v. State, No. 02-06-00021-CR, 2006 WL
3334171, at *3 (Tex. App.—Fort Worth Nov. 16, 2006, pet. ref’d) (mem. op., not
designated for publication).  Therefore, we hold that as soon as Appellant
pulled over to the side of the road and yielded to the officer’s show of
authority in the form of flashing emergency lights, he was detained.  See
Hodari D., 499 U.S. at 627–28, 111 S. Ct. at 1551; Corbin, 85 S.W.3d
at 276–79; see also Brendlin v. California, 551 U.S. 249, 254,
127 S. Ct. 2400, 2405 (2007) (stating that a police officer may make a seizure
by a show of authority and without the use of physical force, but there is no
seizure without actual submission; otherwise, there is at most an attempted
seizure).

          In
determining whether reasonable suspicion justified the detention, we do not
consider evidence obtained after Appellant was detained.  Of the above cited
facts relied upon by the trial court in concluding that reasonable suspicion supported
the detention for DWI, evidence that Appellant smelled of alcohol when the
officer approached his window falls within this category and does not,
therefore, figure into our analysis.

          Other
facts, however, cited from the time the officer began following Appellant to
the time that Appellant yielded to his show of authority—that is, when
Appellant pulled over and stopped—do figure in the analysis and will be
compared against the evidence in the record.  These include the following: 
that Appellant was driving late at night, weaving out of his lane, failing to
signal lane changes, driving over marked prohibited areas, was “exceedingly”
slow to respond when the officer activated his emergency lights, engaged his
turn signal, turned it off again, and turned it on again.

Driving
Late at Night

          Officer
Merendon testified that he was working the midnight shift when, at
approximately 12:18 a.m., he first observed Appellant’s Chevy Tahoe.  A DVD
copy of the officer’s dashboard video recording corroborates that time and was
obviously made at night:  the roadway is dark and the few vehicles depicted have
their headlights on.  The evidence supports the finding that Appellant was
driving late at night.

Weaving

          Officer
Merendon also testified that he was following Appellant’s Tahoe in the right of
two southbound lanes on Davis when he saw it “veer off to the right of the
lane” so that the “right tires crossed completely over” a solid white line
separating a striped area from the rest of the roadway.  He further testified
that he “observed the tires completely cross that white line and then continue
back onto the right lane.”  Then, within seconds, Appellant crossed over the
striped portion of the roadway separating the two southbound lanes and his
tires rolled onto the striped line and partially into the left lane.

          The
DVD shows the right tires of the Tahoe traveling on the solid white stripe
separating the right lane from a diagonally striped area between the right hand
lane and a turn lane leading off the roadway.  The DVD also displays the time
in seconds.  According to the DVD, the recording commenced at 00:18:14. 
Appellant’s right tires can be seen approaching the solid white line at
00:18:29, they are on top of the line at 00:18:30, and are off it again by 00:18:31. 
The Tahoe appears to weave slightly within its lane and then, at 00:19:00, it approaches
the dashed white line separating the right southbound lane from the left.  The
left tires next appear to touch the dashed line at 00:19:06 and cross
completely over it between 00:19:07 and 00:19:08.  By 00:19:09, the car is
again completely within the right hand lane.

          Although
the weaving is neither pronounced nor extreme, it is weaving nonetheless, and in
the light most favorable to the trial court’s ruling, we must therefore hold
that the evidence supports the trial court’s finding that Appellant weaved out
of his lane.  See Wiede, 214 S.W.3d at 24; Kelly, 204 S.W.3d at
818–19.

Failing
to Signal Lane Changes

          The
prosecutor asked Officer Merendon whether he saw Appellant “on multiple
occasions change lanes or at least go out of the lane without signaling his
intention to do so?”  Because the DVD does not show Appellant actually changing
lanes but, as we have discussed, it does show him weaving, we interpret Officer
Merendon’s response, “correct,” to refer to the second part of the State’s
question, and therefore evidence that he did not see Appellant use a turn
signal when Appellant weaved outside his lane.

          But,
as the State pointed out, a driver is required to signal an intention to change
lanes.  See Tex. Transp. Code Ann. § 545.104(a) (West 2011) (“An
operator shall use the signal . . . to indicate an intention to turn, change
lanes, or start from a parked position.”).  The State begged the question that
Appellant’s weaving indicated his intent to change lanes, which would require
that he signal that intent by using a turn signal.  We fail to see how evidence
of weaving supports an inference that Appellant intended to change lanes.  Indeed,
it seems more likely to imply the contrary.  Moreover, evidence that Appellant
stayed mostly in one lane of travel, deviating twice by at most a tire’s width,
suggests that he did not intend to change lanes.  Either Appellant intended to
stay within his lane but weaved or he intended to change lanes but failed to
signal.  Absent evidence that Appellant intended to change lanes to counter the
evidence that he did not, we hold that even in the light most favorable to the
trial court’s ruling, the finding that Appellant failed to signal lane changes
is not supported by the record.

Driving
Over Marked Prohibited Areas

          In
its conclusions of law, the trial court noted that one of the facts that
supported its conclusion that the officer had reasonable suspicion was that
Appellant was “driving over marked prohibited areas.”  In its findings of fact,
however, the trial court did not specifically find that Appellant drove over
marked prohibited areas.  Officer Merendon testified that he witnessed the
right tires of Appellant’s Tahoe cross “completely over the solid white line”
of a “striped area” that is “clearly not a marked lane for traffic” and that cars
are not supposed to drive over and through.  As discussed above in connection
with the trial court’s finding that Appellant was weaving, the DVD shows Appellant’s
right tires traveling on the solid white line for approximately one second.  Our
review of the DVD does not, however, show that the tires went so far as to
support a conclusion that Appellant crossed completely over the line and actually
drove onto the striped area.  We hold, therefore, that even when viewed in the
light most favorable to the trial court’s ruling, the evidence does not support
a finding that Appellant drove “over marked prohibited areas,” as distinct from
a finding that he merely weaved to the right slightly out of his lane.  We consider
this evidence, therefore, as additional support for the trial court’s finding
that Appellant weaved from his lane and not for a finding that he drove into a
prohibited area.

“Exceedingly”
Slow to Respond

          The
trial court found that Appellant was “exceedingly” slow to respond to Officer
Merendon’s emergency lights.  Officer Merendon testified that Appellant was
traveling at forty miles an hour, that it took Appellant approximately twenty
to twenty one seconds to respond, and that Appellant’s slow response concerned
him that Appellant might be trying to hide something or that “if a person was
intoxicated, they may be slow to respond.”

          The
DVD shows that Appellant pulled off the road approximately forty seconds after
the officer activated his emergency lights.  There is no evidence in the record
of what is a normal or average response time; thus, it is difficult to assess
the trial court’s use of the adverb “exceedingly” in characterizing the speed
(or lack thereof) of Appellant’s response.  However, from our review of the DVD,
it is apparent that Appellant did not pull over immediately after Officer
Merendon activated his emergency lights, and in that regard, the evidence
viewed in the light most favorable to the ruling supports a finding that
Appellant’s response was delayed if not “exceedingly slow.”

Turn
Signal On, Off, On

          Finally,
the trial court equates Appellant’s use of his turn signal with “indecisiveness”
that might indicate Appellant’s impairment.  The DVD shows that during a six
second time span, the turn signal came on, went off, and came on again before
Appellant pulled over, and Officer Merendon testified that this suggested that
Appellant might have been intoxicated.  Viewed in the appropriate light, we
hold that the evidence supports the trial court’s finding.

The Supported
Findings Add Up to Reasonable Suspicion

          Having
viewed the evidence in the light most favorable to the trial court’s ruling and
having compared the record evidence with the trial court’s findings, we hold
that the following are supported by the evidence:  Appellant was driving late
at night, weaved, was slow to respond, and used his turn signals in a way to
suggest a degree of impairment.  The question now is whether these facts, given
the totality of the circumstances, support the trial court’s conclusion that Officer
Merendon had reasonable suspicion to stop Appellant for DWI.

          In
Curtis v. State, a novice highway trooper and his field-training
officer, who had years of experience and specialized training in detecting intoxicated
drivers, saw Curtis’s vehicle weaving in and out of its lane over a short
distance late at night.  238 S.W.3d 376, 377 (Tex. Crim. App. 2007).  The court
of appeals held that the trial court had erred by denying Curtis’s motion to
suppress because the troopers did not have reasonable suspicion to stop his vehicle
for DWI.  Id.  The court of criminal appeals reversed, holding that the
court of appeals improperly applied the standard of review by failing to
consider the totality of the circumstances and rational inferences from the
facts, both of which supported the trial court’s conclusion that the troopers
had reasonable suspicion to investigate Curtis for DWI.  Id. at 381.

          In
Dunkelburg v. State, this court held that reasonable suspicion for DWI
was shown when the officer testified that he stopped the appellant because he
believed there was a “possibility” that the appellant was driving while
intoxicated.  276 S.W.3d 503, 507 (Tex. App.—Fort Worth 2008, pet. ref’d).  The
officer’s dashboard video supported the officer’s testimony that the appellant
was weaving, crossed the lane divider at least once, and was slow to react to
the officer’s emergency lights.  Id.  The officer further testified that
in his experience, intoxicated drivers are frequently encountered at that time
of night and that his training showed that weaving is one of the clues that a
driver is intoxicated.  Id.

          In
James v. State, a patrolling sheriff’s deputy believed that the driver
of a Jeep Cherokee might have been impaired after he saw the Cherokee leave a
rest stop, fail to signal as it entered the freeway, cross the center stripe
between the northbound lanes, and then veer back over the yellow stripe onto
the shoulder.  102 S.W.3d 162, 167 (Tex. App.—Fort Worth 2003, pet. ref’d). 
This court held that the officer had reasonable suspicion to stop the driver
for DWI.  Id. at 172.

          In
McQuarters v. State, this court held that a late night traffic stop was
justified based on reasonable suspicion that the appellant, whose vehicle
crossed the left lane stripe twice while traveling at slow speed in the left
lane of the interstate, was intoxicated.  58 S.W.3d 250, 253, 255 (Tex. App.—Fort
Worth 2001, pet. ref’d).

          Applying
these precedents, considering the totality of the circumstances in the light
most favorable to the trial court’s ruling, and keeping in mind that the test
for reasonable suspicion is wholly objective and disregards the subjective
intent of the officer, we hold that the evidence in the record supports the
trial court’s conclusion that the officer had reasonable suspicion to justify
stopping Appellant to investigate him for DWI.  Accordingly, we overrule
Appellant’s sole issue.

Conclusion

          Having
overruled Appellant’s sole issue, we affirm the trial court’s judgment.

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER and GABRIEL, JJ.

 

LIVINGSTON,
C.J., concurs without opinion

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 5, 2012









[1]See Tex. R. App. P. 47.4.





[2]Tex. Penal Code Ann. §
49.09(b)(2) (West Supp. 2011).





[3]Where, as in this case,
the appellant does not separately brief state and federal constitutional
claims, we assume that he claims no greater protection under the state
constitution than that provided by the federal constitution.  Fowler v.
State, 266 S.W.3d 498, 501 n.2 (Tex. App.—Fort Worth 2008, pet. ref’d) (en
banc).  Therefore, we analyze Appellant’s claim solely under the Fourth
Amendment to the United States Constitution, following guidelines set by the
United States Supreme Court in interpreting the Fourth Amendment.  See State
v. Guzman, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).