Opinion issued March 19, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00157-CV

————————————

**SARA PETERS, Appellant**

**V.**

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellee**

---

**On Appeal from County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1002860**

---

# O P I N I O N

Sara Peters appeals from a suit for judicial review in which the trial court affirmed the administrative law judge's (ALJ) order granting the Texas Department of Public Safety's (DPS) petition to suspend her driver's license for

ninety days.[1] Peters's single issue on appeal contends that the trial court erred because the ALJ's finding that the officer had reasonable suspicion to stop her is not reasonably supported by substantial evidence. We reverse and render judgment in Peters's favor.

## Background

On July 16, 2011, Peters was stopped and subsequently arrested by Harris County Sheriff's Department Deputy Christopher Kerr for driving while intoxicated. Peters gave a breath specimen, the analysis of which showed an alcohol concentration of .08 or greater.[2] At Peters's request, a hearing was held before an ALJ on September 28, 2011 to contest the suspension of her driving privileges. TEX. TRANSP. CODE ANN. § 524.031 (West 2007).

At the hearing, DPS introduced into evidence the DIC-23 Peace Officer's Sworn Report, the DIC-24 Statutory Warning, the DIC-25 Notice of Suspension/Temporary Driving Permit, the breath-test slip, and the DIC-56 Breath Test Technical Supervisor Affidavit. The DIC-23, signed and sworn to by Deputy Kerr, stated that on or about July 16, 2011 at 1:39 a.m., he observed a white Lexus in the 9500 block of the North Sam Houston Tollway. Under the section

---

[1] TEX. TRANSP. CODE ANN. §§ 524.022 (West Supp. 2012), .041 (West 2007).

[2] Peters does not challenge the breath-specimen analysis and concedes that the ALJ's finding that she had a blood alcohol concentration of .08 or greater was reasonably supported by substantial evidence.

designated "Reasonable suspicion to make contact," Deputy Kerr stated, "While on patrol I observed the above vehicle traveling 40mph in a 65mph posted zone." Deputy Kerr did not testify at the hearing.

Two days after the hearing, the ALJ issued an administrative decision, which included findings of fact, conclusions of law, and an order authorizing DPS to suspend Peters's driving privileges. The ALJ made only one finding of fact with respect to the reasonableness of the stop: "On 7-16-11, reasonable suspicion to stop [Peters] existed, in that Officer Kerr observed [Peters] operating a motor vehicle traveling 40 mph in a 65 mph speed zone on the tollway in the 9500 block of North Sam Houston Tollway, Houston, Harris County, Texas." Based upon these facts, as well as the analysis of Peters's breath specimen, and Deputy Kerr's observations of Peters after he pulled her over, the ALJ concluded that DPS met its burden of proof under Transportation Code section 524.035 and was therefore authorized to suspend Peters's driving privileges for ninety days.[3]

Peters filed a suit for judicial review in the county civil court at law. After reviewing the hearing transcript and evidence presented to the ALJ, as well as

---

[3] In particular, the ALJ found that Deputy Kerr had probable cause to arrest Peters for driving while intoxicated based on the fact that (1) he observed her driving on the tollway at twenty-five miles an hour under the speed limit, (2) after he pulled her vehicle over, Deputy Kerr observed that Peters's breath smelled strongly of alcohol, she had slurred speech, bloodshot eyes, and was disoriented, and (3) Peters's performance on two field-sobriety tests, as described in Deputy Kerr's report.

arguments of counsel, the trial court signed an order affirming the ALJ's decision. Peters timely filed her appeal of this order. *See Tex. Dep't Pub. Safety v. Barlow*, 48 S.W.3d 174, 175–76 (Tex. 2001).

## Discussion

### a. Standard of Review

"[C]ourts review administrative license suspension decisions under the substantial evidence standard." *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *see* TEX. TRANSP. CODE ANN. § 724.047 (West 2011) ("Chapter 524 governs an appeal from an action of the department, following an administrative hearing under this chapter, in suspending or denying the issuance of a license."); TEX. TRANSP. CODE ANN. § 524.043 (West 2007) (establishing rules for appeal but not defining scope of review). We presume that the ALJ's decision is supported by substantial evidence, and Peters, as the complaining party, has the burden to prove otherwise. *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). In contested cases, if more than a scintilla of evidence supports the administrative findings, we affirm those findings; "[i]n fact, an administrative decision may be sustained even if the evidence preponderates against it." *Mireles*, 9 S.W.3d at 131. Under the Administrative Procedure Act, Reviewing courts may not substitute their judgment for

the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but . . . (2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. . . .

TEX. GOV'T CODE ANN. § 2001.174 (West 2008). We review the county civil court at law's substantial evidence review of the administrative ruling de novo. *See Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (noting that ALJ's findings of fact are entitled to deference but that "whether there is substantial evidence to support an administrative decision is a question of law" and as such, neither county court nor ALJ's determination of issue is entitled to deference on appeal).

### b. License Suspension Statute

The Transportation Code requires DPS to suspend the driving privileges of anyone the department determines had an alcohol concentration level of .08 grams or greater while operating a motor vehicle in a public place. TEX. TRANSP. CODE ANN. § 524.012(b)(1) (West Supp. 2012); *see also* TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011) (defining "intoxicated" as having an alcohol concentration of 0.08 or more). In order to prevail at the license-suspension hearing in the present case, DPS was required to prove by a preponderance of the evidence that (1) Peters had an alcohol concentration of a level of .08 or greater,

5

while operating a motor vehicle in a public place and (2) that Deputy Kerr had "reasonable suspicion to stop or probable cause to arrest" Peters. *See* TEX. TRANSP. CODE ANN. § 524.035(a)(1)(A), (2) (West Supp. 2012). Because Peters is only challenging the sufficiency of the evidence with respect to the second issue (i.e., whether the ALJ's finding that Deputy Kerr had reasonable suspicion to stop her is reasonably supported by substantial evidence), we will limit our discussion to the evidence supporting the reasonableness of the stop.

### c. Evidence Supporting ALJ's Finding of Reasonable Suspicion to Stop

DPS argues that there is substantial evidence in the record to demonstrate that Deputy Kerr had reasonable suspicion to stop Peters because he suspected that she was driving while intoxicated. DPS further contends that, even if there was not reasonable suspicion to stop Peters based on Deputy Kerr's suspicion that she was intoxicated, Deputy Kerr's detention of Peters was nevertheless appropriate and lawful because he detained her as part of his "community caretaking" responsibility.[4] Neither basis proffered by DPS is supported by substantial evidence in the record.

---

[4] The record demonstrates that Peters was observed driving twenty-five miles per hour below the posted speed limit around 1:40 in the morning on a public road. Such conduct does not constitute a traffic violation, however, absent evidence that Peters was impeding the normal and reasonable movement of traffic. TEX. TRANSP. CODE ANN. § 545.363(a) (West 2011). As such, Deputy Kerr did not have reasonable suspicion to detain Peters on this basis. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (stating police officer may stop and

6

### d. *Reasonable Suspicion to Stop*

A police officer may temporarily detain an individual for investigative purposes if he reasonably suspects that the individual is involved in criminal activity. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). It requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. "A reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford*, 158 S.W.3d at 492–93.

DPS argues that, based on the totality of the circumstances, there is substantial evidence in the record to demonstrate that Deputy Kerr had reasonable suspicion to stop Peters because he suspected that she was driving while intoxicated. Citing to two Court of Criminal Appeals opinions, DPS argues that Deputy Kerr could have temporarily detained Peters for reasonable suspicion of driving while intoxicated based upon the fact that he observed her driving slowly in the early morning hour on a public roadway. *See Foster*, 326 S.W.3d at 613;

---

detain motorist if officer has reasonable suspicion traffic violation was committed or if offense is committed in officer's presence).

*Curtis v. State*, 238 S.W.3d 376, 379–80 (Tex. Crim. App. 2007). *Foster* and *Curtis*, however, are both factually distinguishable.

In *Foster*, a peace officer was stopped at a red light a few blocks from Austin's Sixth Street bar district at 1:30 in the morning when he heard a revving noise and noticed the vehicle immediately behind him lurched forward several times. *Foster*, 326 S.W.3d at 610. The officer testified that he decided to detain Foster, who was driving that vehicle, because he thought Foster's driving was "unsafe and—due to where [they] were downtown and the time of night, [the officer] was concerned that maybe [Foster] was impaired." *Id.* at 610–11. He further testified that, based on his prior training and experience in traffic patrol, it was common for many people to be impaired in Austin's Sixth Street bar district late at night. *Id.* at 611.

In *Curtis*, two state troopers detained Curtis after they observed his vehicle weaving in and out of his lane of traffic over a short distance at 1:00 a.m. *Curtis*, 238 S.W.3d at 377. Both officers testified that they had received specialized training in detecting DWIs, and that based on that training, they knew that a driver's weaving in and out of a lane was a possible indication that the driver was intoxicated. *Id.* at 380. The court concluded that the officers had reasonable suspicion to stop Curtis, based upon the totality of the circumstances (e.g., the

officers' work experience and specialized training in detecting intoxicated drivers, Curtis's erratic driving during the early morning hours). *Id.* at 381.

Unlike these cases, in which the officers testified about how their DWI training and experience helped them form opinions regarding a driver's possible intoxication, the record in the present case is silent regarding Deputy Kerr's training and experience. It is also silent with respect to the characteristics of the area in which Peters was observed driving—as opposed to the defendant in *Foster*, who was observed driving in an unsafe manner in the early morning hours near Sixth Street in Austin. Here, the only relevant evidence in the record is that Peters was observed driving slowly on the Sam Houston Tollway at 1:40 in the morning. Without more, we cannot say that Deputy Kerr articulated facts, that when combined with rational inferences from those facts, lead him to reasonably conclude that Peters was intoxicated before he detained her.

Accordingly, we conclude that there is not substantial evidence in the record to support the ALJ's finding of reasonable suspicion to stop on this basis.

### e. *Community Caretaking*

DPS further contends that, even if there was not reasonable suspicion to stop Peters based on Deputy Kerr's suspicion that she was intoxicated, Deputy Kerr's detention of Peters was nevertheless appropriate and lawful because he detained her as part of his "community caretaking" responsibility.

Police officers may stop and assist someone as part of their "community caretaking" responsibility if a reasonable person would believe the driver to be in need of help. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) (citing *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). The community caretaking responsibility—which is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"—is properly invoked in cases in which the reviewing court determines that the officer was primarily motivated by the community caretaking purpose—as opposed to law enforcement—and that the officer had a reasonable belief that the detained person needed assistance. *Corbin*, 85 S.W.3d at 277 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, (1973)). Simply put, an officer cannot make a valid community caretaking stop if his primary motivation is suspicion of criminal wrongdoing. *See Corbin*, 85 S.W.3d at 277.

In deciding if the officer was primarily motivated by the community caretaking purpose, courts gives deference to the determination of the fact-finder. *Id.* DPS argues that one could logically infer from the facts set forth in Deputy Kerr's report that his stop of Peters was primarily motivated by his community caretaking responsibility, and that it is a logical inference that the ALJ found that this was Deputy Kerr's primarily motivation when he detained Peters, and, as such, we should defer to ALJ's inferred finding on this issue.

10

Citing to *Ortega v. State*, DPS argues that there are objective facts demonstrating that Deputy Kerr was attempting to use his community caretaking responsibilities when he detained Peters, namely, the fact that Peters was alone in her vehicle, driving below the speed limit on the North Sam Houston Tollway at 1:40 a.m., and she thereby posed a danger to herself and other motorists. 974 S.W.2d 361 (Tex. App.—San Antonio 1998, pet. ref'd). Unlike *Ortega* and the other cases relied upon by DPS, there is nothing in the record to indicate that Deputy Peters stopped Peters because he was concerned for her safety—as opposed to believing that she was intoxicated or had violated another law. *See Ortega*, 974 S.W.2d at 362 (officer's report indicated officer stopped driver in order "to ascertain if [driver] was experiencing vehicle problems"); *Munoz v. State*, No. 02-09-00391-CR, 2010 WL 3304242, at *3–4 (Tex. App.—Fort Worth Aug. 19, 2010, no pet.) (mem. op., not designated for publication) (officer testified that he thought driver was lost and he was concerned for her welfare after observing her vehicle, which had been traveling twenty-five miles-per-hour in forty-five mile-per-hour zone, pull off into small, dimly lit parking lot); *Tex. Dep't of Pub. Safety v. Svoboda*, No. 04-05-00796-CV, 2006 WL 1684793, at *1, *3 (Tex. App.—San Antonio June 21, 2006, pet. denied) (mem. op.) (officers testified that they observed vehicle traveling at twenty miles-per-hour below posted speed limit on public roadway; after they witnessed driver pull off onto improved shoulder,

11

officers approached vehicle to find out if driver needed assistance; officer's report identified encounter as "welfare check"). In each of these cases, the arresting officer indicated that he approached the driver out of concern for the person's safety, either in his report or during his testimony.

Although it is certainly true that a fact-finder can draw reasonable inferences from the record, the type of inferences that DPS argues for are not "inferences" at all—just mere speculation and conjecture. First, there is no evidence that Peters was "alone" in her vehicle. Second, DPS's assertion that Peters "posed a danger to herself and other motorists" is not a reasonable inference to draw from the record given the fact that there is no evidence of any other vehicles sharing the roadway with Peters, or that driving slowly is inherently unsafe, regardless of the circumstances. Although one might surmise that Deputy Kerr could have been concerned for Peters's safety, that is not a proper inference to draw from the facts, particularly when Deputy Kerr stated in his report that he had reasonable suspicion to contact Peters because he observed her vehicle "traveling 40mph in a 65mph posted zone."

Accordingly, we conclude that there is not substantial evidence in the record to support the ALJ's finding of reasonable suspicion to stop. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E).

12

## Conclusion

Having determined that the ALJ's finding that Deputy Kerr had reasonable suspicion to stop Peters is not reasonably supported by substantial evidence, we reverse the judgment of the county civil court at law and render judgment (1) reversing the ALJ's order and (2) rendering that DPS's petition to suspend Peters's driving privileges be denied. *See* TEX. R. APP. P. 43.3 (requiring appellate courts, as general rule, to render judgment trial court should have rendered); *Tex. Dep't of Pub. Safety v. Story*, 115 S.W.3d 588, 593 (Tex. App.—Waco 2003, no pet.) (stating Government Code section 2001.174 authorizes reviewing court to either reverse agency's decision and render judgment in favor of party seeking review or reverse agency's decision and remand for further proceedings); 1 TEX. ADMIN. CODE § 159.251(b) (2012) (stating that if ALJ finds that DPS did not prove all requisite facts by preponderance of the evidence, ALJ shall deny DPS's petition to suspend driving privileges).


Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

13