In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00010-CR
_____

STUART WAYNE CRUMPTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. 2013-0204

MEMORANDUM OPINION

Stuart Wayne Crumpton pleaded guilty to possession of a dangerous drug, a misdemeanor. *See* Tex. Health & Safety Code Ann. § 483.001(2) (West Supp. 2014), § 483.041 (West 2010). The trial court found the evidence sufficient to find Crumpton guilty, but deferred adjudication of guilt, and placed him on deferred adjudication community supervision for eight months. In two appellate issues, Crumpton argues that the trial court erred (1) in denying his motion to suppress because no evidence supports the trial court's finding that the officer who initiated

1

the traffic stop had reasonable suspicion to believe that Crumpton had violated the law, and (2) in assessing attorney's fees. We overrule issue one, sustain issue two, and affirm the judgment as modified.

MOTION TO SUPPRESS

Crumpton filed a motion to suppress challenging the legality of the traffic stop and arguing that "[n]either the facts in the [probable cause] affidavit nor the facts in the offense report indicate that [Crumpton]'s driving was unsafe[.]" Crumpton also asserts in his motion that his consent to search his vehicle "does not vitiate the unreasonable seizure, which requires the suppression of all evidence found as a result[]" thereof.

Officer Christopher Lima with the Polk County Sheriff's Office testified at the suppression hearing. At approximately 2:30 p.m. one afternoon in March 2013, Lima was on patrol and observed Crumpton's vehicle, with its "left blinker" on, swerve away from oncoming traffic "[a]nd back into the lane" while driving south on Highway 146, a two-lane highway. Lima then followed him for approximately two miles. According to Lima, over those two miles Crumpton partially "crossed over the lane of traffic and came back into his lane on more than one occasion[,]" and had his left turn signal on for "the whole two miles[,]" and never made a turn. Lima clarified at the suppression hearing that although his offense report states that

Crumpton drove "[o]ut of the lane of travel and off the road, and back into the southbound lane of travel" (which Lima admitted could be construed as describing Crumpton swerving out of the lane of travel only once), Crumpton's "left tire crossed the yellow line" in the middle of the highway more than once and "he swerved to the left and right."

Officer Lima activated his "emergency equipment" and initiated a traffic stop based on what he believed was a traffic violation, Crumpton's failure to maintain a single lane.[1] Officer Lima testified that when he decided to stop Crumpton, Lima suspected that Crumpton was possibly driving while intoxicated "[b]ased on the coming in and out of the lane of travel, back into the lane of travel, inattentive to the blinker on, things of that nature[,]" and Lima "wanted to make sure [Crumpton] was okay to drive." Lima testified that Crumpton told Lima that Crumpton's tire was causing his vehicle to veer right, and he sometimes forgets to turn his blinker off. Based on his training and experience, Lima did not believe Crumpton's explanation.

---

[1]Section 545.060 of the Texas Transportation Code provides: "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a) (West 2011).

3

Officer Lima observed that Crumpton's eyes were "extremely bloodshot" and that, when asked for his driver's license, Crumpton's hand was shaking. Officer Lima asked Crumpton to get out of his vehicle "[f]or officer safety reasons[,] . . . to speak with him some more in reference to . . . his mannerism and his walk and whatnot, to make sure he was not too intoxicated to drive." Lima did not smell alcohol on Crumpton's breath, and Crumpton's speech was not slurred and he did not stumble when he walked. Lima did not administer any field sobriety tests.

Crumpton voluntarily consented to the search of his person and his vehicle. The search of the vehicle lasted approximately nine minutes. Officer Lima retrieved six prescription pills from the center console of the vehicle and a substance that appeared to be marijuana. Officer Lima testified that he read Crumpton his Miranda rights and then asked him if the marijuana and prescription pills belonged to him. Crumpton admitted the marijuana belonged to him. He explained that the prescription pills were not his and that he had been given them, and he admitted that he did not have a prescription for the pills. Lima arrested Crumpton and charged him with possession of a dangerous drug but "held the possession of marijuana and forwarded it to the [District Attorney's] office for further prosecution if need be[.]"

The trial court denied Crumpton's motion to suppress and made findings of fact and conclusions of law. The trial court's findings of fact pertinent to the issues on appeal are that Lima observed the vehicle "veer from a single lane of traffic[,]"; that Lima "observed the vehicle for a distance of approximately 2 miles during which time the vehicle swerved or veered outside its lane of traffic multiple times and the turn signal of the vehicle remained on" but the vehicle made no turn; and that after Lima initiated the stop, Crumpton exited the vehicle and "did not exhibit indications of impairment or alcohol or drug use." The trial court concluded that Lima had reasonable suspicion to believe Crumpton had violated the law, the stop and period of detention were reasonable, Crumpton gave consent to search his vehicle, the marijuana and drugs located during the search should not be suppressed, and Crumpton's arrest was a valid warrantless arrest.

In issue one, Crumpton asserts that "[t]he record is devoid of evidence to support any finding that Detective Lima had reasonable suspicion to detain Mr. Crumpton[,]" and therefore, "all physical evidence and statements obtained as a result of the unreasonable seizure should be suppressed." According to Crumpton, Officer Lima did not have reasonable suspicion to stop Crumpton for failure to maintain a single lane or for driving while intoxicated, Detective Lima did not have probable cause to stop Crumpton for his failure to turn off his blinker, and

5

Crumpton's consent to search his vehicle "does not cure Detective Lima's illegal seizure[.]" Crumpton also challenges the trial court's finding of fact that "[t]he Officer observed the vehicle for a distance of approximately 2 miles during which time the vehicle swerved or veered outside its lane of traffic multiple times and the turn signal of the vehicle remained on. The vehicle made no turn." Crumpton contends the record does not support the finding that his vehicle "swerved or veered outside its lane of traffic multiple times[,]" and that Lima did not indicate "why he found this movement of the left tire over the yellow line to be unsafe."

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

6

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 29 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). We must examine the reasonableness of a temporary detention in light of the totality of the circumstances. *See Woods*, 956 S.W.2d at 38. For reasonable suspicion to exist, it is not necessary that an actual violation occurred; rather, all that is necessary is that "the officer reasonably believed that a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Carmouche v. State*, 10 S.W.3d

323, 328 (Tex. Crim. App. 2000). In determining whether an officer's suspicion was reasonable, we employ an objective standard: whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21-22; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)). There is no requirement that a traffic regulation has been or is about to be violated in order for an officer to have reasonable suspicion sufficient to justify a stop of a vehicle. *See Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). An officer may be justified in stopping a driver based upon a reasonable suspicion of driving while intoxicated. *Id.*; *see also Hernandez*, 983 S.W.2d at 872 (officer had reasonable suspicion to stop a driver who may have been driving while intoxicated where the driver had been weaving between lanes, although the observed conduct may not have been "an inherently illegal act").

Crumpton asserts that Lima failed to explain how many times Crumpton swerved, and that because Lima's testimony established only that the swerve was "partial" (meaning, according to Crumpton, that only his left tire crossed the yellow line), the record does not support the trial court's finding that Crumpton's vehicle "swerved or veered outside its lane of traffic multiple times." At the

8

suppression hearing, Lima testified that he initially observed Crumpton swerve away from incoming traffic "[a]nd back into the lane" and then, while Lima followed Crumpton for approximately two miles, Lima observed Crumpton partially cross "over the lane of traffic and c[ome] back into his lane on more than one occasion." We give deference to the trial court's finding of fact that Crumpton's vehicle "swerved or veered outside its lane of traffic multiple times[,]" as that finding is supported by the record. *See Wade*, 422 S.W.3d at 666.

Crumpton relies on *Peters v. Texas Department of Public Safety*, 404 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2013, no pet.), in support of his assertion that "[t]o articulate reasonable suspicion, the hearing record should demonstrate how an officer's training and experience combined with 'characteristics of the area' and the time of day or night supported his conclusion that a person was driving while intoxicated." *Peters* is factually distinguishable, and Crumpton misconstrues that opinion.

In *Peters*, Peters appealed from a suit for judicial review in which the trial court affirmed the administrative law judge's order granting Texas DPS's petition to suspend her driver's license for ninety days. *Id.* at 2. At the hearing, the DIC-23, signed and sworn by Deputy Kerr, was introduced into evidence. *Id.* Under the portion of the form designated "Reasonable suspicion to make contact," Deputy

Kerr stated "[w]hile on patrol I observed the above vehicle traveling 40 mph in a 65 mph posted zone." *Id.* Deputy Kerr, who pulled over and arrested Peters, did not testify at the hearing. *Id.* The ALJ issued an administrative decision and an order authorizing DPS to suspend Peter's driving privileges, and the trial court affirmed the ALJ's decision. *Id.* at 2-3. Arguing that the trial court erred because the ALJ's finding that Deputy Kerr had reasonable suspicion to stop her was not reasonably supported by substantial evidence, Peters appealed to the Fourteenth Court of Appeals. *Id.* at 2.

In *Peters*, DPS contended that there was substantial evidence in the record to show that Deputy Kerr had reasonable suspicion to stop Peters because he suspected that she was driving while intoxicated and that, in the alternative, Peters' detention was nevertheless lawful because Deputy Kerr detained her as part of his "community caretaking" responsibility. *Id.* at 4. In concluding that the ALJ's finding that Deputy Kerr had reasonable suspicion to stop Peters was not reasonably supported by substantial evidence, the court of appeals distinguished two cases relied on by DPS. *Id.* at 4-5. In those cases, the Court of Criminal Appeals found that, based on the totality of the circumstances, there was substantial evidence in the record to show that the officer had reasonable suspicion to stop the defendant for driving while intoxicated. *Id.* at 4-5, 7 (distinguishing

*Foster v. State*, 326 S.W.3d 609, 610-11 (Tex. Crim. App. 2010) and *Curtis v. State*, 238 S.W.3d 376, 380-81 (Tex. Crim. App. 2007)). The court in *Peters* noted that in *Foster*, the officer initiating the stop testified that he decided to detain Foster "because he thought Foster's driving was 'unsafe and—due to where [they] were downtown and the time of night, [the officer] was concerned that maybe [Foster] was impaired.'" *Peters*, 404 S.W.3d at 5 (quoting *Foster*, 326 S.W.3d at 610-11). The court in *Peters* also noted that in *Curtis*, two state troopers who detained Curtis testified they observed Curtis weaving in and out of his lane of traffic over a short distance at 1 a.m., and that based on their training in detecting DWIs, they knew that a driver's weaving in and out of a lane was a possible indication that the driver was intoxicated. *Id.* (citing *Curtis*, 238 S.W.3d at 377, 380).

In *Peters*, Deputy Kerr did not testify and the court of appeals explained that "the only relevant evidence in the record is that Peters was observed driving slowly on the Sam Houston Tollway at 1:40 in the morning[,]" which was from the DIC-23 form. *Id.* at 2, 5. The court of appeals held that "[*w*]*ithout more*, we cannot say that Deputy Kerr articulated facts, that when combined with rational inferences from those facts, led him to reasonably conclude that Peters was intoxicated before he detained her." *Id.* at 5 (emphasis added). The court of appeals in *Peters* merely

11

distinguished the cases relied on by DPS by noting that the officers in those cases articulated more facts than in *Peters*.

In order for the State to carry its burden of demonstrating the reasonableness of the stop on the basis of a suspicion that appellant was intoxicated, the conduct involved must be conduct that gave the officer ample reason to suspect that the defendant was driving while intoxicated, or there must be additional evidence (e.g., testimony from the officer that, based on his experience, he subjectively suspected appellant of being intoxicated; or testimony regarding the objective circumstances—time, location, the vehicle's movement, etc.) that would have led a reasonable officer to suspect the driver of being intoxicated. *See id.* at 4-5; *Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.—Beaumont 2000, no pet.); *Hernandez v. State*, 983 S.W.2d at 870. In the present case, Officer Lima testified at the suppression hearing that he had been a Polk County peace officer seven or eight years and had experience conducting DWI stops. He explained that when he decided to stop Crumpton, Lima suspected that Crumpton was possibly driving while intoxicated "[b]ased on the coming in and out of the lane of travel, back into the lane of travel, inattentive to the blinker on, things of that nature[,]" and Lima "wanted to make sure [Crumpton] was okay to drive." Lima testified that he initially observed Crumpton swerve away from incoming traffic "[a]nd back into

12

the lane" and then, while Lima followed Crumpton for approximately two miles, Lima observed Crumpton's failure to turn his turn signal off and observed Crumpton partially cross "over the lane of traffic and c[ome] back into his lane on more than one occasion." Officer Lima testified that once he had initiated the traffic stop and due to the "circumstances that led up to [the] traffic stop[,]" he asked Crumpton whether he had anything to drink or if he had taken any medication that day.

Unlike in *Peters,* in this case the officer testified that one of the reasons for the stop was that he believed Crumpton might be intoxicated. Based on the totality of the circumstances, we conclude that Officer Lima articulated facts, which taken together with rational inferences from those facts, that justified his reasonable suspicion that Crumpton was driving while intoxicated. *See Kennimer v. State*, No. 05-12-01674-CR, 2013 Tex. App. LEXIS 10575, **1-2, 6-7 (Tex. App.—Dallas Aug 21, 2013, no pet.) (mem. op., not designated for publication) (although officer's basis for the stop was the appellant's failure to maintain a single lane, the officer observed driving behavior—defendant's quick acceleration at a traffic signal, obscene gesture, and crossing into an adjacent lane—that could reasonably lead the officer to believe appellant was driving while intoxicated); *Walker v. State*, No. 2-04-336-CR, 2006 Tex. App. LEXIS 1328, at *13-14 (Tex. App.—Fort

Worth Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (where officer testified he believed appellant might be intoxicated based on his initial observation of appellant driving onto the highway shoulder and then crossing the center yellow lines of the road and the officer's suspicion remained when appellant continued weaving while being followed, the officer articulated facts, which taken together with rational inferences from those facts, that justified the officer's reasonable suspicion that appellant was driving while intoxicated); *State v. Arend*, No. 2-03-336-CR, 2005 Tex. App. LEXIS 3289, at \*\*11-14 (Tex. App.—Fort Worth Apr. 28, 2005, pet. ref'd) (mem. op., not designated for publication) (holding officer's observation of the appellee's vehicle weaving within the lane and continued weaving as the officer followed for approximately forty-five to fifty seconds, and the officer's testimony that he believed from his initial observations that appellee was driving while intoxicated, provided specific articulable facts to justify officer's reasonable suspicion that the appellee was driving while intoxicated); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd) (concluding that even if the officer's testimony that defendant was driving at slow speed in left lane and crossed over center line did not establish a reasonable suspicion that appellant had violated a traffic law, it did raise sufficient facts to justify stop based on reasonable suspicion that defendant was intoxicated);

14

*State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref'd) (noting that "weaving" combined with another act—"i.e., *going into another lane of traffic*, high rates of speed or erratic speed changes"—justify an investigative stop and adding that "mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity") (emphasis added); *Gajewski v. State*, 944 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (in light of the officer's experience, his observations of appellant's weaving across both the solid and broken lines dividing traffic was sufficient to provide reasonable suspicion to initially stop appellant because, even though no traffic violation had occurred, the driver's conduct could cause the officer to reasonably believe the driver had lost control of his mental and physical faculties by ingesting alcohol or drugs); *Davis v. State*, 923 S.W.2d 781, 788 (Tex. App.—Beaumont 1996) (holding stop proper where officer testified he suspected driver was intoxicated or tired based on weaving within lane), *rev'd on other grounds*, 947 S.W.2d 240 (Tex. Crim. App. 1997). The record supports the trial court's conclusion that Officer Lima had reasonable suspicion to believe that Crumpton had violated the law.

Finding that Lima was justified in initiating the stop, we need not address Crumpton's argument that Lima did not have reasonable suspicion to believe that

15

Crumpton failed to maintain a single lane under section 545.060, that Lima did not have probable cause to stop Crumpton for failure to turn off his blinker, or that the evidence obtained in the search should have been suppressed because his consent to search his vehicle is a fruit of the illegal stop. Issue one is overruled.

ATTORNEY'S FEES

In issue two, Crumpton argues that after being found indigent, his status did not change before he was sentenced. He concludes the trial court erred in assessing $600 in attorney's fees in the judgment. A trial court may tax the defendant with attorney's fees if there is a material change in the defendant's ability to pay attorney's fees between the date the trial court initially determined the defendant to be indigent and appointed trial counsel and the date trial counsel renders its final judgment. *See* Tex. Code Crim. Proc. Ann. arts. 26.04(p), 26.05(g) (West Supp. 2014); *see also Roberts v. State*, 327 S.W.3d 880, 884 (Tex. App.—Beaumont 2010, no pet.).

In this case, the record shows that the trial court found Crumpton to be indigent and appointed trial counsel before Crumpton was tried on the charge of possession of a dangerous drug. Following his conviction for possession of a dangerous drug, the trial court found Crumpton remained indigent and the trial court appointed counsel to represent Crumpton in this appeal.

16

The trial court made no express findings regarding whether there had been a change in Crumpton's status as an indigent defendant. Nor is there any evidence in the record that would support any implied finding that Crumpton's financial circumstances materially changed following the trial court's initial determination that he was indigent. Because no evidence supports any implied finding that there was a material change in Crumpton's ability to pay attorney's fees, the trial court erred in awarding the fees as costs. *See* Tex. Code Crim. Proc. Ann. art. 26.05(g); *Roberts*, 327 S.W.3d at 884. We sustain issue two.

We are authorized by the Texas Rules of Appellate Procedure to render the judgment the trial court should have rendered. *See* Tex. R. App. P. 43.2, 43.3. Therefore, we modify the judgment the trial court rendered by deleting the award of $600 in attorney's fees as costs of court. We affirm the trial court's judgment as modified.

AFFIRMED AS MODIFIED.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered December 10, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

17